BOEHM, J.,
dissenting.
I respectfully dissent. I agree with Justice Rucker that due process concerns can arise if the passage of time substantially impairs the opportunity of a capital defendant to present mitigation evidence. However, in my view, it is not solely the passage of a substantial amount of time that can raise these concerns, but whether that time was attributable to failures of the State’s criminal justice system. Ultimately, as I see it, this case presents an issue of cruel and unusual punishment.
Twenty-five years have passed since Azania was convicted of this crime in 1982. As explained below and as the trial court found, the bulk of that time is attributable to flaws in the criminal justice system, not to anything Azania did. In the meantime Azania has remained a death row inmate. That amount of time on death row at the hands of others is not unusual; it is extraordinary.[1] I conclude that further pursuit of the death penalty at this date violates the Indiana Constitution by imposing punishment that is both cruel and unusual. Accordingly, I would affirm Judge David’s order dismissing further pursuit of the death penalty in this case.
Azania contends that his constitutional right to due process of law has been violated by this passage of time. The majority responds that to the extent delay is caused by the defense, Azania cannot be heard to complain of it. I agree. But the majority proceeds to attribute the delays in Azania’s case to Azania. The keystone of the majority’s reasoning is its holding that in determining the cause of any delay “during which the defendant has the burden of prosecuting either an appeal or a petition for collateral review,” the defendant bears the burden of demonstrating that the State slowed the process.
I respectfully submit that this proposition is both novel and indefensible. As for novelty, I note only that the majority cites no authority, and I find none. The facts of Azania’s long journey through the criminal processes of this state show the fundamen *1011 tal unfairness of this doctrine. Azania was convicted in 1982. He appealed, and his sentence and conviction were affirmed in 1984.[2] He sought post-conviction review in 1985 and was denied relief by the post-conviction court. He appealed, and in 1993 this Court reversed the denial of post-conviction relief as to the death sentence, finding that Azania’s Sixth Amendment right to effective counsel had been violated by counsel’s failure to present any mitigating evidence at the penalty phase.[3] The majority attributes this passage of time to Azania because he would have appealed and sought post-conviction relief even if the State had not withheld evidence. Presumably the majority is correct that Azania would have launched an appeal and sought post-conviction relief whether or not the State had withheld evidence. The 1993 reversal of the death penalty was grounded on ineffective assistance of counsel, not withholding of evidence, but that does not matter for these purposes. The point here is that whether it was a successful appeal based on the State’s wrongful withholding of evidence or upon ineffective counsel, in either case the delay is attributable to the State’s failure to provide a necessary element to the proper working of a criminal prosecution.
In simple terms, if the State seeks to kill a human being, it has to get it right. That means it provides a fair trial, albeit not a perfect one, free of reversible error by the trial court. It also means the prosecution plays by the rules and does not create reversible error by withholding exculpatory evidence, misleading the jury, or otherwise. And, importantly in this case, it means that the trial court has appointed defense counsel who provide the adequate representation guaranteed by the Sixth Amendment. We cannot know what the result of the penalty phase would have been if Azania’s counsel had performed up to snuff, and because the State is obligated to provide effective counsel, that shortcoming is attributable to the State, not to Azania. In short, the Constitution of the United States and the Indiana Constitution require the State to provide a system of criminal justice that is consistent with the requirements of due process of law and fundamental fairness. That system includes prosecutors, courts, and public defenders for those who are indigent. If an appeal or post-conviction relief is successful, only the time attributable to the defendant’s dithering in achieving that result is fairly deemed caused by the defendant. The rest is caused by the State, whether in the person of the prosecutor responsible for a mistrial, the trial judge who committed reversible error, or defense counsel provided by the State whose substandard performance produced the need to retry the case.
In this case, our 1993 decision noted that there was “a long series of amendments and legal maneuvering” in the post-conviction proceedings. Averhart v. State, 614 N.E.2d 924, 926 (Ind.1993). Presumably much of this was fairly attributable to maneuvers in the trial court by Azania. But in light of the subsequent history of this case, it is sufficient to note that at least the five years between 1982 and 1993 that were consumed by the two appeals cannot be deemed caused by the defense. After the case was remanded for a new penalty phase in 1993, delays were first occasioned by the State’s motions to disqualify appointed defense counsel and two experts retained by counsel. Ultimately that counsel and the experts resigned. A second penalty phase was conducted by new counsel, but African-Americans were inadvertently but improperly excluded *1012 from the jury pool. This was affirmed on direct appeal in 2000,[4] but a second post-conviction proceeding was authorized based on the discovery of evidence of the problem in the jury pool. In 2002 we again ordered a new penalty phase before a properly composed jury.[5] All nine of these years were attributable to the appointment of defense counsel who ultimately resigned at the State’s insistence and to errors in the county’s jury pool selection process. None of this was at the hands of the defendant, so by 2002, at least fourteen of the twenty years that had passed since Azania’s conviction are solely attributable to the State.
On remand, Azania moved in January 2003 to transfer the case to Lake County and later to select the jury from that county. These motions were denied in April 2003. The resulting delay of three months may properly be viewed as caused by the defense. The two years until Judge David’s decision on June 25, 2005 to dismiss the penalty phase was consumed with ordinary discovery and motions practice. Some of the delays appear to be due to the State’s slow responses to discovery and motions, but there is presumably force to the majority’s assertion that the defense in a capital case is often in no hurry to reach a resolution. When the penalty is the only remaining issue that contention gains plausibility, so I assume that the majority of the passage of time, say eighty percent, or two years of the thirty months from January 2003 through June 2005, can be viewed as caused by the defendant.
The net result of this exercise is that Azania has spent at least fifteen years on death row due to flaws in the criminal justice system for which he bears no responsibility. Azania has presented this appeal as one grounded in due process and speedy trial rights. Surely these bodies of law are relevant and contain instructive principles. But ultimately, as Indiana has recognized in adopting Criminal Rule 24, death is different.[6] That difference is most obvious in the irreversibility of a death sentence once it is carried out. For that reason prosecutors must exercise more than usual care in selecting cases in which the death penalty is sought; trial courts must take additional precautions to see that the case is conducted properly; and appellate courts give heightened levels of review. There is an additional difference that in most cases does not come into play. In Lackey v. Texas, 514 U.S. 1045, 115 S.Ct. 1421, 131 L.Ed.2d 304 (1995), Justice Stevens initially called for consideration of whether the passage of time alone — in that case seventeen years — is sufficient to question whether either retribution or deterrence continues to justify an execution. Echoing those concerns in Knight v. Florida, 528 U.S. 990, 120 S.Ct. 459, 145 L.Ed.2d 370 (1999), Justice Breyer noted that courts have described imprisonment under threat of impending execution as “horrible,” “dehumanizing,” and exacting “a frightful toll,” frequently leading to suicide attempts and insanity. Id. at 994, 120 S.Ct. 459 (quoting In re Medley, 134 U.S. 160, 172, 10 S.Ct. 384, 33 L.Ed. 835 (1890); People v. Anderson, 6 Cal.3d 628, 100 CaLRptr. 152, 493 P.2d 880, 894 (1972); Furman v. Georgia, 408 U.S. 238, 288-89, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) (Brennan, J., concurring)). In Azania’s case we have not only a longer *1013 period on death row — twenty-five years— we also have the compounding factor that at least fifteen years of that treatment was due to mistakes of others. That is, in my view, cruel. Thankfully, it is unusual.[7] We have inmates on death row today who were convicted many years ago, but none is the victim of such extensive delays occasioned by the State.
As the majority makes clear, Azania has not presented his claims in terms of the Eighth Amendment to the Federal Constitution or Article I, Section 15 of the Indiana Constitution, both of which prohibit cruel and unusual punishment. Rather Azania argues only that his speedy trial and due process rights have been violated, and the trial judge found a denial of due process of law based on the inordinate passage of time caused by the State. I acknowledge that we routinely treat claims as waived or not presented when an appellant does not raise them or asserts a claim in conclusory terms with no supporting authority or independent reasoning. Once again, however, I invoke the maxim that death is different I do not believe we should resolve an issue that directly affects the validity of a death sentence on grounds of waiver, forfeiture, or similar procedural issues, at least when the substance of the argument was fully presented by both sides. Here the issue of length of delay and how it came about were fully presented. The only question is whether we should restrict ourselves to addressing the implications of that delay as an issue of Fourteenth'Amendment due process by reason of the prejudice resulting from the passage of time. I believe the claim is best understood as a claim that the result of the delay in this case is to impose cruel and unusual punishment as either a freestanding Eighth Amendment claim, a claim that the Fourteenth Amendment incorporates the Eighth Amendment, or a claim that the Indiana Constitution prohibits imposing the death penalty. I recognize that the Supreme Court of the United States has yet to entertain a Lackey claim despite invitations from Justices Stevens and Breyer to do so. I therefore cannot conclude that such a claim is established under the Federal Constitution. I do, however, find the reasoning of Justices Stevens and Breyer to be persuasive and therefore would hold that the Indiana Constitution prevents further pursuit of the death penalty in this case.

. The petitioner’s time on death row in Knight v. Florida, 528 U.S. 990, 120 S.Ct. 459, 145 L.Ed.2d 370 (1999) had reached twenty-four years and six months when the Supreme Court denied his petition for certiorari. This far exceeded the length of time in the few cases that had then addressed Lackey claims. Id. at 998-99, 120 S.Ct. 459 (Breyer, J., dissenting).

. Averhart v. State, 470 N.E.2d 666 (Ind. 1984).

. Averhart v. State, 614 N.E.2d 924 (Ind. 1993).

. Azania v. State, 730 N.E.2d 646 (Ind.2000).

. Azania v. State, 778 N.E.2d 1253 (Ind.2002).

. Criminal Rule 24 unfortunately came several years after Azania's conviction. It imposes a number of specific requirements on a capital case that do not apply in criminal prosecutions generally. See generally Normal Lef-stein, Reform of Defense Representation in Capital Cases: The Indiana Experience and Its Implications for the Nation, 29 Ind. L.Rev. 495 (1996).

. According to Steven D. Stewart, Indiana Death Row 2006: Capital Punishment in Indiana (July 1, 2006), there are only six defendants in Indiana currently on death row based on convictions or guilty pleas that occurred before 1990, and four of these have obtained no relief from their appeals, post-conviction proceedings, or federal habeas corpus petitions.