130 S.Ct. 541 (2009)
Cecil C. JOHNSON, Petitioner,
v.
Phil BREDESEN, Governor of Tennessee, et al.
No. 09-7839 (09A521).
Supreme Court of United States.
December 2, 2009.
STEVENS, J.
The application for stay of execution of sentence of death presented to Justice STEVENS and by him referred to the Court is denied. The petition for a writ of certiorari is denied.
*542 Statement of Justice STEVENS, with whom Justice BREYER joins, respecting the denial of certiorari.
Petitioner Cecil Johnson, Jr., has been confined to a solitary cell awaiting his execution for nearly 29 years.[1] Johnson bears little, if any, responsibility for this delay. After his execution date was set and on the day the Governor of Tennessee denied him clemency, Johnson brought this Eighth Amendment challenge under Rev. Stat. § 1979, 42 U.S.C. § 1983 to enjoin the State from executing him after this lengthy and inhumane delay. See Lackey v. Texas, 514 U.S. 1045, 1045-1046, 115 S.Ct. 1421, 131 L.Ed.2d 304 (1995) (STEVENS, J., statement respecting denial of certiorari); see also Thompson v. McNeil, 556 U.S. ___, ___, 129 S.Ct. 1299, ___ L.Ed.2d ___ (2009) (same); id., at 1299, (BREYER, J., dissenting from denial of certiorari). Because I remain steadfast in my view "that executing defendants after such delays is unacceptably cruel," id., at 1300, I would grant the stay application and the petition for certiorari.
Johnson was tried and convicted of three counts of first degree murder in 1981. He continues to maintain his innocence. Complaint ¶ 9. There was no physical evidence tying Johnson to the crime. See Johnson v. Bell, 525 F.3d 466, 490 (C.A.6 2008) (Cole, J., dissenting). In 1992 a change in state law gave Johnson access, for the first time, to substantial evidence undermining key eyewitness testimony against him. Id., at 473. This evidence calls into question the persuasive force of the eyewitness' testimony, and, consequently, whether Johnson's conviction was infected with constitutional error. See Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); Johnson, 525 F.3d, at 490 (Cole, J., dissenting). The merits of Johnson's Brady claim are not before us; we denied certiorari on this issue several months ago. No. 08-7163, 557 U.S. ___, ___ S.Ct. ___, ___ L.Ed.2d ___ (2009). But the constitutional concerns raised by Judge Cole's dissent only underscore my strongly held view that state-caused delay in state-sponsored killings can be unacceptably cruel. See Thompson, 556 U.S., at ___, 129 S.Ct., at 1300-01.[2] We cannot know as a definitive matter whether, if the State had not withheld exculpatory evidence, Johnson would have been convicted of these crimes. We do know that Johnson would not have waited for 11 years on death row before the State met its disclosure obligations. In short, this is as compelling a case as I have encountered for addressing the constitutional concerns that I raised in Lackey.
This case deserves our full attention for another reason. Johnson has brought his Eighth Amendment claim under 42 U.S.C. § 1983. More typically, such claims have been brought in habeas corpus. See, e.g., Thompson v. Secretary for Dept. of Corrections, 517 F.3d 1279, 1280 (C.A.11 2008) (per curiam); Allen v. Ornoski, 435 F.3d 946, 956-960 (C.A.9 2006); cf. Knight v. Florida, 528 U.S. 990, 998, 120 S.Ct. 459, 145 L.Ed.2d 370 (1999) (BREYER, *543 J., dissenting from denial of certiorari) (discussing Lackey claim raised after state resentencing on successful habeas corpus petition). This case's posture raises two important questions: whether a Lackey claim is cognizable under §1983; and, if it is not, whether a second federal habeas petition raising a Lackey claim is a successive petition under 28 U.S.C. § 2244(b)(2). The Sixth Circuit agreed with the District Court's conclusion that a standalone Lackey challenge under §1983 is the "functional equivalent" of a habeas corpus challenge, App. to Pet. for Cert. B-9 (District Court opinion), and thus must proceed under 28 U.S.C. § 2244(b)(2)'s successive petition bar, see Allen, 435 F.3d, at 956-960. The resolution of these questions below poses a nearly insurmountable hurdle for those seeking to raise similar Eighth Amendment challenges.
In my view, these procedural questions are inextricably linked to the two underlying evils of intolerable delay. First, the delay itself subjects death row inmates to decades of especially severe, dehumanizing conditions of confinement. See Thompson, 556 U.S., at ___, 129 S.Ct., at 1299-1300 (STEVENS, J., respecting denial of certiorari); Lackey, 514 U.S., at 1046-1047, 115 S.Ct. 1421 (same); see also Furman v. Georgia, 408 U.S. 238, 288, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) (Brennan, J., concurring) ("[T]he prospect of pending execution exacts a frightful toll during the inevitable long wait between the imposition of sentence and the actual infliction of death"). Second, "delaying an execution does not further public purposes of retribution and deterrence but only diminishes whatever possible benefit society might receive from petitioner's death." Thompson, 556 U.S., at ___, 129 S.Ct., at 1300 (STEVENS, J., respecting denial of certiorari). In other words, the penological justifications for the death penalty diminish as the delay lengthens. Id., at 1300; Lackey, 514 U.S., at 1046-1047, 115 S.Ct. 1421. Thus, I find constitutionally significant both the conditions of confinement and the nature of the penalty itself.
In light of these coextensive concerns, I find it quite difficult to conclude, as the courts below did, that Johnson's § 1983 action is the functional equivalent of a habeas petition. Both the gravamen of petitioner's complaint and one of the central concerns animating Lackey is that the "method" of the State's execution of a death sentencea lengthy delay due in no small part to the State's malfeasance in this caseis itself unconstitutional. We have held that "method" of execution claims are cognizable under § 1983. Hill v. McDonough, 547 U.S. 573, 580, 126 S.Ct. 2096, 165 L.Ed.2d 44 (2006); see also Nelson v. Campbell, 541 U.S. 637, 645-647, 124 S.Ct. 2117, 158 L.Ed.2d 924 (2004). But a successful Lackey claim would have the effect of rendering invalid a particular death sentence, suggesting that Johnson's Lackey claim "directly call[s] into question the `fact' or `validity' of the sentence itself," Nelson, 541 U.S., at 644, 124 S.Ct. 2117. Were petitioner to prevail, it is true that the State will not be able to go forward in this case "by simply altering its method of execution," ibid. On the other hand, it is equally true that, had the State not carried out his sentence in this intolerably cruel manner, the State would have been quite free, as a constitutional matter, to "go forward with the sentence," ibid.
Although the Court of Appeals' treatment of Johnson's claim as a habeas challenge is a close question, its decision to apply § 2244(b)(2)'s successive habeas bar is not. The Sixth Circuit's decision has the curious effect of forcing Johnson to bring a Lackey claim prematurely, possibly *544 at a time before it is ripe.[3] Moreover, construing this claim as the functional equivalent of a habeas action also has the unfortunate effect of inviting further delay: A petitioner would be compelled to return to state court to exhaust his Lackey claim in the first instance under 28 U.S.C. § 2254(b)(1). For these reasons, I am persuaded that a Lackey claim, like a claim that one is mentally incompetent to be executed, should, at the very least, not accrue until an execution date is set. See Ceja v. Stewart, 134 F.3d 1368, 1371-1372 (C.A.9 1998) (Fletcher, J., dissenting); cf. Panetti v. Quarterman, 551 U.S. 930, 945, 127 S.Ct. 2842, 168 L.Ed.2d 662 (2007).
When I first expressed my views in Lackey, I did not envision such procedural obstacles to the consideration of a claim that nearly three decades of delay on death row, much of it caused by the State, has deprived a person of his Eighth Amendment right to avoid cruel and unusual punishment. One does not need to accept the proposition "that the imposition of the death penalty represents `the pointless and needless extinction of life with only marginal contributions to any discernible social or public purposes,'" Baze v. Rees, 553 U.S. 35, ___, 128 S.Ct. at 1551 (2008) (STEVENS, J., concurring in judgment) (quoting Furman, 408 U.S., at 312, 92 S.Ct. 2726 (White, J., concurring)), in order to agree that the imposition of the death penalty on these extreme facts is without constitutional justification. Most regrettably, a majority of this Court continues to find these issues not of sufficient weight to merit our attention.
THOMAS, J., concurring.
Justice THOMAS, concurring in the denial of certiorari. In 1981, the petitioner in this case was convicted and sentenced to death for three brutal murders he committed in the course of a robbery. He spent the next 29 years challenging his conviction and sentence in state and federal judicial proceedings and in a petition for executive clemency. His challenges were unsuccessful. He now contends that the very proceedings he used to contest his sentence should prohibit the State from carrying it out, because executing him after the "lengthy and inhumane delay" occasioned by his appeals would violate the Eighth Amendment's prohibition on "cruel and unusual" punishment. See Ante, at 542 (citing Lackey v. Texas, 514 U.S. 1045, 1045-1046, 115 S.Ct. 1421, 131 L.Ed.2d 304 (1995) (STEVENS, J., statement respecting denial of certiorari)).
It has been 14 years since JUSTICE STEVENS proposed this "novel" Eighth Amendment argument. Lackey, supra, at 1045, 115 S.Ct. 1421. I was unaware of any constitutional support for the argument then. See Knight v. Florida, 528 U.S. 990, 990, 120 S.Ct. 459, 145 L.Ed.2d 370 (1999) (THOMAS, J., concurring in denial of certiorari). And I am unaware of any support for it now. There is simply no authority "in the American constitutional tradition or in this Court's precedent for the proposition that a defendant can avail himself of the panoply of appellate and collateral procedures and then complain when his execution is delayed." Thompson *545 v. McNeil, 556 U.S. ___, 129 S.Ct. at 1301 (2009) (THOMAS, J., concurring in denial of certiorari) (internal quotation marks and citation omitted). Petitioner cites no evidence otherwise and, for all his current complaints about delay, did not raise a Lackey objection to the speed of his proceedings in the 1999 habeas petition he filed 18 years into his tenure on death row. See ante, at 543-544, n. 3.
Undeterred, Justice STEVENS insists that petitioner's Eighth Amendment claim warrants relief. It does not, and Justice STEVENS' arguments to the contrary stand in stark contrast not only to history and precedent, but also to his own recent statement in Muhammad v. Kelly, 558 U.S. ___, 130 S.Ct. 541, ___ L.Ed.2d ___, 2009 WL 3642518 (2009) (slip op., at 1) (statement respecting denial of certiorari) decrying the "perversity of executing inmates before their appeals process has been fully concluded." In Justice STEVENS' view, it seems the State can never get the timing just right. The reason, he has said, is that the death penalty itself is wrong. McNeil, supra, at 1300 (statement respecting denial of certiorari) (citing Baze v. Rees, 553 U.S. 35, ___, 128 S.Ct. at 1546, 1551 (2008) (STEVENS, J., concurring in judgment)). But that is where he deviates from the Constitution and where proponents of his view are forced to find their support in precedent from the "European Court of Human Rights, the Supreme Court of Zimbabwe, the Supreme Court of India, or the Privy Council." Knight, supra, at 990, 120 S.Ct. 459 (THOMAS, J. concurring in denial of certiorari).
Eager to distinguish this case from Knight and all the other cases in which the Court has refused to grant relief on Lackey grounds, Justice STEVENS asserts that the petition here presents important questions regarding the proper procedural vehicle for bringing a Lackey claim that merit this Court's review. First, the procedural posture in which a Lackey claim arises does not change the fact that the claim itself has no constitutional foundation. Accordingly, the claim's procedural posture does not matter for purposes of merits relief; a Lackey claim would fail no matter how it arrived. In addition, Justice STEVENS concedes that the unusual contours of petitioner's Eighth Amendment claim are the reason the procedural questions in this case are difficult. Given that, our order in this case rightly adheres to our precedents denying relief on Lackey claims, however presented. Second, even if the procedural claims in this case had merit, they would not warrant review because Justice STEVENS admits that a "successful Lackey claim would have the effect of rendering invalid a particular death sentence," ante, at 543, and thus would "`directly call into question the "fact" or "validity" of the sentence itself,'" ante, at 543 (quoting Nelson v. Campbell, 541 U.S. 637, 644, 124 S.Ct. 2117, 158 L.Ed.2d 924 (2004)). Accordingly, the Sixth Circuit plainly did not err in treating petitioner's § 1983 motion as "the functional equivalent of" a habeas petition. Ante, at 543. And for the reasons above, the panel's treatment of the petition as a second or successive petition would not, even if reversed, entitle petitioner to the merits relief he seeks.
At bottom, Justice STEVENS' arguments boil down to policy disagreements with the Constitution and the Tennessee legislature. Ante, at 542-543 ("`[D]elaying an execution does not further public purposes of retribution and deterrence but only diminishes whatever possible benefit society might receive from petitioner's death.... In other words, the penological justifications for the death penalty diminish as the delay lengthens." (internal quotation marks and citation omitted)). Such views, no matter how "steadfast[ly]" held, *546 ante, at 542, are not grounds for enjoining petitioner's execution or for granting certiorari on the procedural questions that attend his Lackey claim. As long as our system affords capital defendants the procedural safeguards this Court has long endorsed, defendants who avail themselves of these procedures will face the delays Justice STEVENS laments. There are, of course, alternatives. As Blackstone observed, the principle that "punishment should follow the crime as early as possible" found expression in a "statute, 25 Geo. II. c. 37," decreeing that "in case of murder, the judge shall in his sentence direct execution to be performed on the next day but one after sentence passed." 4 W. Blackstone, Commentaries *397. I have no doubt that such a system would avoid the diminishing justification problem JUSTICE STEVENS identifies, but I am equally confident that such a system would find little support from this Court. See Knight, 528 U.S., at 990 n. 1, 120 S.Ct. 459 (THOMAS, J. concurring). I thus concur in the denial of certiorari.
NOTES
[1] "Inmates who are under a sentence of death shall be single-celled and housed in a maximum security unit separate from the general population." State of Tennessee, Dept. of Correction, Administrative Policies and Procedures, Index # 506.14(VI)(B)(2) (2009), online at http://www.state.tn.us/correction/pdf/ 506-14.pdf (as visited Dec. 1, 2009).
[2] The possibility that there was constitutional error in Johnson's case is far from unique. See Root, Cruel and Unusual Punishment: A Reconsideration of the Lackey Claim, 27 N.Y.U. Rev. L. & Soc. Change 281, 312-313 (2002) (discussing error rates in capital trials) (citing J. Liebman, J. Fagan, & V. West, A Broken System: Error Rates in Capital Cases, 1973-1995, p. 5 (2000)).
[3] The State argues, and the courts below agreed, that Johnson should have brought his Eighth Amendment claim in the federal habeas proceeding he commenced in 1999. At that point in time, Johnson had been on death row for 18 years. This was one year longer than the petitioner in Lackey. Of course, by 1999, the Court had denied certiorari in Lackey and in Knight v. Florida, 528 U.S. 990, 120 S.Ct. 459, 145 L.Ed.2d 370, which involved a 19-year delay. Therefore, when Johnson filed his federal habeas action, he had reason to believe that an 18-year delay was not long enough to trigger Eighth Amendment concerns and that any Lackey-based claim was premature.