# SUPREME COURT OF THE UNITED STATES

_____

No. 09–7839 (09A521)

_____

## CECIL C. JOHNSON *v.* PHIL BREDESEN, GOVERNOR OF TENNESSEE, ET AL.

ON APPLICATION FOR STAY AND ON PETITION FOR A WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

[December 2, 2009]

JUSTICE THOMAS, concurring in the denial of certiorari. In 1981, the petitioner in this case was convicted and sentenced to death for three brutal murders he committed in the course of a robbery. He spent the next 29 years challenging his conviction and sentence in state and federal judicial proceedings and in a petition for executive clemency. His challenges were unsuccessful. He now contends that the very proceedings he used to contest his sentence should prohibit the State from carrying it out, because executing him after the "lengthy and inhumane delay" occasioned by his appeals would violate the Eighth Amendment's prohibition on "cruel and unusual" punishment. See *Ante*, at 1 (citing *Lackey* v. *Texas*, 514 U. S. 1045, 1045–1046 (1995) (STEVENS, J., statement respecting denial of certiorari)).

It has been 14 years since JUSTICE STEVENS proposed this "novel" Eighth Amendment argument. *Lackey*, *supra*, at 1045. I was unaware of any constitutional support for the argument then. See *Knight* v. *Florida*, 528 U. S. 990, 990 (1999) (THOMAS, J., concurring in denial of certiorari). And I am unaware of any support for it now. There is simply no authority "in the American constitutional tradition or in this Court's precedent for the proposition that a defendant can avail himself of the panoply of appellate

and collateral procedures and then complain when his execution is delayed." *Thompson* v. *McNeil*, 556 U. S. ___, (2009) (slip op., at 1) (THOMAS, J., concurring in denial of certiorari) (internal quotation marks and citation omitted). Petitioner cites no evidence otherwise and, for all his current complaints about delay, did not raise a *Lackey* objection to the speed of his proceedings in the 1999 habeas petition he filed 18 years into his tenure on death row. See *ante*, at 4–5, n. 3.

Undeterred, JUSTICE STEVENS insists that petitioner's Eighth Amendment claim warrants relief. It does not, and JUSTICE STEVENS' arguments to the contrary stand in stark contrast not only to history and precedent, but also to his own recent statement in *Muhammad* v. *Kelly,* 558 U. S. ___ (2009) (slip op., at 1) (statement respecting denial of certiorari) decrying the "perversity of executing inmates before their appeals process has been fully concluded." In JUSTICE STEVENS' view, it seems the State can never get the timing just right. The reason, he has said, is that the death penalty itself is wrong. *McNeil*, *supra*, at ___ (slip op., at 4) (statement respecting denial of certiorari) (citing *Baze* v. *Rees*, 553 U. S. 35, ___ (2008) (STEVENS, J., concurring in judgment) (slip op., at 8, 17)). But that is where he deviates from the Constitution and where proponents of his view are forced to find their support in precedent from the "European Court of Human Rights, the Supreme Court of Zimbabwe, the Supreme Court of India, or the Privy Council." *Knight*, *supra*, at 990 (THOMAS, J. concurring in denial of certiorari).

Eager to distinguish this case from *Knight* and all the other cases in which the Court has refused to grant relief on *Lackey* grounds, JUSTICE STEVENS asserts that the petition here presents important questions regarding the proper procedural vehicle for bringing a *Lackey* claim that merit this Court's review. First, the procedural posture in which a *Lackey* claim arises does not change the fact that

the claim itself has no constitutional foundation. Accordingly, the claim's procedural posture does not matter for purposes of merits relief; a *Lackey* claim would fail no matter how it arrived. In addition, JUSTICE STEVENS concedes that the unusual contours of petitioner's Eighth Amendment claim are the reason the procedural questions in this case are difficult. Given that, our order in this case rightly adheres to our precedents denying relief on *Lackey* claims, however presented. Second, even if the procedural claims in this case had merit, they would not warrant review because JUSTICE STEVENS admits that a "successful *Lackey* claim would have the effect of rendering invalid a particular death sentence," *ante*, at 4, and thus would "'directly call into question the "fact" or "validity" of the sentence itself,'" *ante*, at 4 (quoting *Nelson* v. *Campbell*, 541 U. S. 637, 644 (2004)). Accordingly, the Sixth Circuit plainly did not err in treating petitioner's §1983 motion as "the functional equivalent of" a habeas petition. *Ante*, at 3. And for the reasons above, the panel's treatment of the petition as a second or successive petition would not, even if reversed, entitle petitioner to the merits relief he seeks.

At bottom, JUSTICE STEVENS' arguments boil down to policy disagreements with the Constitution and the Tennessee legislature. *Ante*, at 3–4 ("'[D]elaying an execution does not further public purposes of retribution and deterrence but only diminishes whatever possible benefit society might receive from petitioner's death. . . . In other words, the penological justifications for the death penalty diminish as the delay lengthens." (internal quotation marks and citation omitted)). Such views, no matter how "steadfast[ly]" held, *ante*, at 2, are not grounds for enjoining petitioner's execution or for granting certiorari on the procedural questions that attend his *Lackey* claim. As long as our system affords capital defendants the procedural safeguards this Court has long endorsed, defendants who avail themselves of these procedures will face the

delays JUSTICE STEVENS laments. There are, of course, alternatives. As Blackstone observed, the principle that "punishment should follow the crime as early as possible" found expression in a "statute, 25 Geo. II. c. 37," decreeing that "in case of murder, the judge shall in his sentence direct execution to be performed on the next day but one after sentence passed." 4 W. Blackstone, Commentaries *397. I have no doubt that such a system would avoid the diminishing justification problem JUSTICE STEVENS identifies, but I am equally confident that such a system would find little support from this Court. See *Knight*, 528 U. S., at 990 n. 1 (THOMAS, J. concurring). I thus concur in the denial of certiorari.