# SUPREME COURT OF THE UNITED STATES

## MANUEL VALLE *v.* FLORIDA

ON APPLICATION FOR STAY AND PETITION FOR WRIT OF
CERTIORARI TO THE SUPREME COURT OF FLORIDA

No. 11–6029. (11A229) (Decided September 28, 2011)

The application for stay of execution of sentence of death presented to JUSTICE THOMAS and by him referred to the Court is denied. The motion of Bar Human Rights Committee of England and Wales, et al. for leave to file a brief as *amicus curiae* is granted. The petition for a writ of certiorari is denied.

JUSTICE BREYER, dissenting from denial of stay.

The State of Florida seeks to execute Manuel Valle for a crime for which he was initially sentenced to death more than 33 years ago. Valle asks us to consider whether that execution following decades of incarceration on death row violates the Constitution's prohibition of "cruel and unusual punishments." U. S. Const., Amdt. 8. I would consider the claim. See *Lackey* v. *Texas*, 514 U. S. 1045 (1995) (Stevens, J., respecting denial of certiorari); *Knight* v. *Florida*, 528 U. S. 990, 993 (1989) (BREYER, J., dissenting from denial of certiorari).

I have little doubt about the cruelty of so long a period of incarceration under sentence of death. In *Lackey* and in *Knight* Justice Stevens and I referred to the legal sources, in addition to studies of attempted suicides, that buttress the commonsense conclusion that 33 years in prison under threat of execution is cruel. See *In re Medley*, 134 U. S. 160, 172 (1890) (describing as "horrible" the "feelings" that accompany uncertainty about whether, or when, the execution will take place); *Solesbee* v. *Balkcom*, 339 U. S. 9, 14 (1950) (Frankfurter, J., dissenting) ("In the history of murder, the onset of insanity while awaiting execution of a

death sentence is not a rare phenomenon"); Strafer, Volunteering for Execution, 74 J. Crim. L. & C. 860, 872, n. 44 (1983) (a study of Florida inmates showed that 35% of those confined on death row attempted suicide; 42% seriously considered suicide); *id.,* at 869–871, ("Recent studies and law suits document both the barbaric conditions pervading death rows and the debilitating and life-negating effects of these conditions").

So long a confinement followed by execution would also seem unusual. The average period of time that an individual sentenced to death spends on death row is almost 15 years. Thirty three years is more than twice as long. And, such delays are uncommon. See Dept. of Justice, Bureau of Justice Statistics, T. Snell, Statiscal Tables, Capital Punishment, 2009, p. 19 (Dec. 2010) (Table 18) (approximately 113 prisoners have been under a sentence of death for more than 29 years out of 3,173 death row prisoners in total; 33 of those 113 are in Florida). Cf. *Knight*, 528 U. S., at 993–994 (BREYER, J., dissenting from denial of certiorari) (noting that 24 prisoners had been on death row for more than 20 years). See also *id.,* at 995 ("A growing number of courts outside the United States— *courts that accept or assume the lawfulness of the death penalty*— have held that lengthy delay in administering a *lawful* death penalty renders the ultimate execution inhuman, degrading, or unusually cruel").

The commonly accepted justifications for the death penalty are close to nonexistent in a case such as this one. It is difficult to imagine how an execution following so long a period of incarceration could add significantly to that punishment's deterrent value. It seems yet more unlikely that the execution, coming after what is close to a lifetime of imprisonment, matters in respect to incapacitation. Thus, I would focus upon the "moral sensibility" of a community that finds in the death sentence an appropriate public reaction to a terrible crime. See *Spaziano* v. *Flori-*

*da*, 468 U. S. 447, 481 (1984) (Stevens, J., concurring in part and dissenting in part). And, I would ask how often that community's sense of retribution would forcefully insist upon a death that comes only several decades after the crime was committed.

It might be argued that Valle, not the State, is responsible for the long delay. But Valle replies that more than two decades of delay reflect the State's failure to provide the kind of trial and penalty procedures that the law requires. Regardless, one cannot realistically expect a defendant condemned to death to refrain from fighting for his life by seeking to use whatever procedures the law allows.

It might also be argued that it is not so much the State as it is the numerous procedures that the law demands that produce decades of delay. But this kind of an argument does not automatically justify execution in this case. Rather, the argument may point instead to a more basic difficulty, namely the difficulty of reconciling the imposition of the death penalty as currently administered with procedures necessary to assure that the wrong person is not executed.

Because this case may well raise these questions and because I believe the Court should consider them, I vote to grant the application for stay.