Justice BREYER, concurring.
I join the Court's per curiam disposition of this case for the reason set forth in Justice GINSBURG's concurrence (which I also join). I write separately to underline the fact that this case illustrates one of the basic problems with the administration of the death penalty itself. That problem concerns the unconscionably long periods of time that prisoners often spend on death row awaiting execution. See Glossip v. Gross, 576 U.S. ----, ---- - ----, 135 S.Ct. 2726, 2755, 2765-2733, 192 L.Ed.2d 761 (2015) (BREYER, J., dissenting).
As I have previously noted, this Court once said that delays in execution can produce uncertainty amounting to " 'one of the most horrible feelings to which' " a prisoner " 'can be subjected.' " Id., at ----, 135 S.Ct., at 2773 (quoting In re Medley, 134 U.S. 160, 172, 10 S.Ct. 384, 33 L.Ed. 835 (1890) ). Justice Stevens later observed that the delay in Medley was a delay of four weeks . Lackey v. Texas, 514 U.S. 1045, 1046, 115 S.Ct. 1421, 131 L.Ed.2d 304 (1995) (memorandum respecting denial of certiorari). And he wrote that the Medley description "should apply with even greater force in the case of delays that last for many years." 514 U.S., at 1046, 115 S.Ct. 1421.
In light of those statements, consider the present case. The respondent, Vernon Madison, was convicted of a murder that took place in April 1985. He was sentenced *13 to death and transferred to Alabama's William C. Holman Correctional Facility in September 1985. Mr. Madison is now 67 years old. He has lived nearly half of his life on death row. During that time, he has suffered severe strokes, which caused vascular dementia and numerous other significant physical and mental problems. He is legally blind. His speech is slurred. He cannot walk independently. He is incontinent. His disability leaves him without a memory of his commission of a capital offense.
Moreover, Mr. Madison is one among a growing number of aging prisoners who remain on death row in this country for ever longer periods of time. In 1987, the average period of imprisonment between death sentence and execution was just over seven years. See Dept. of Justice, Bureau of Justice Statistics, T. Snell, Capital Punishment, 2013-Statistical Tables 14 (rev. Dec. 19, 2014) (Table 10). A decade later, in 1997, the average delay was about 11 years. Ibid. In 2007, the average delay rose to a little less than 13 years. Ibid. In 2017, the 21 individuals who have been executed were on death row on average for more than 19 years. See Death Penalty Information Center, Execution List 2017, online at https://deathpenaltyinfo.org/execution-list-2017 (as last visited Nov. 3, 2017). Alabama has executed three individuals this year, including Thomas Arthur, who spent 34 years on death row before his execution on May 26, 2017, at the age of 75; Robert Melson, who spent 21 years on death row before his execution on June 8, 2017; and Torrey McNabb, who spent nearly two decades on death row before his execution on October 19, 2017.
Given this trend, we may face ever more instances of state efforts to execute prisoners suffering the diseases and infirmities of old age. And we may well have to consider the ways in which lengthy periods of imprisonment between death sentence and execution can deepen the cruelty of the death penalty while at the same time undermining its penological rationale. Glossip, supra, at ---- - ----, 135 S.Ct., at 2764 (BREYER, J., dissenting) (recognizing the inevitability of delays in light of constitutional requirements needed to ensure procedural and substantive validity of death sentences); see ante, at 12 (GINSBURG, J., concurring).
Rather than develop a constitutional jurisprudence that focuses upon the special circumstances of the aged, however, I believe it would be wiser to reconsider the root cause of the problem-the constitutionality of the death penalty itself. Glossip, supra, at ----, 135 S.Ct., at 2755 (BREYER, J., dissenting).