Cite as: 578 U. S. \_\_\_\_ (2016)          1

# SUPREME COURT OF THE UNITED STATES

## RICHARD DELMER BOYER *v.* RONALD DAVIS, WARDEN

### ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 15–8119.   Decided May 2, 2016

The petition for a writ of certiorari is denied.

JUSTICE BREYER, dissenting from denial of certiorari.

Richard Boyer was initially sentenced to death 32 years ago. He now asks us to consider whether the Eighth Amendment allows a State to keep a prisoner incarcerated under threat of execution for so long. Boyer's first trial ended with a mistrial after his jury was unable to reach a verdict. Brief in Opposition 1. Boyer's second trial, in 1984, yielded a conviction and capital sentence that the California Supreme Court reversed on the ground that police officers had obtained evidence by violating his constitutional rights. *Ibid.*; see *Boyer* v. *Chappell*, 793 F. 3d 1092, 1094, n. 1 (CA9 2015). Boyer's third trial took place in 1992 and took 14 years to wend its way through California's appellate process. *Id.,* at 1097. In all, 22 years elapsed between his first trial and our denial of his petition for certiorari on direct appeal. See *Boyer* v. *California*, 549 U. S. 1021 (2006). Since then, 10 more years have elapsed.

These delays are the result of a system that the California Commission on the Fair Administration of Justice (Commission), an arm of the State of California, see Cal. S. Res. 44 (2004), has labeled "dysfunctional." Report and Recommendations on the Administration of the Death Penalty in California 6 (2008). Eight years ago, the Commission wrote that more than 10 percent of the capital sentences issued in California since 1978 had been re-

versed. See *id.,* at 20. It noted that many prisoners had died of natural causes before their sentences were carried out, and more California death row inmates had committed suicide than had been executed by the State. *Ibid.* Indeed, only a small, apparently random set of death row inmates had been executed. See *ibid.* A vast and growing majority remained incarcerated, like Boyer, on death row under a threat of execution for ever longer periods of time. See *id.,* at 19–20. The Commission added that California's death penalty system was expensive, with its system for capital cases costing more than 10 times what the Commission estimated the cost would be for a system that substituted the death penalty with life imprisonment without the possibility of parole. *Id.,* at 83–84.

Put simply, California's costly "administration of the death penalty" likely embodies "three fundamental defects" about which I have previously written: "(1) serious unreliability, (2) arbitrariness in application, and (3) unconscionably long delays that undermine the death penalty's penological purpose." *Glossip* v. *Gross*, 576 U. S. ___, ___ (2015) (BREYER, J., dissenting) (slip op., at 2); see *Lackey* v. *Texas*, 514 U. S. 1045 (1995) (memorandum of Stevens, J., respecting denial of certiorari); see also *Valle* v. *Florida*, 564 U. S. 1067 (2011) (BREYER, J., dissenting from denial of stay); *Knight* v. *Florida*, 528 U. S. 990, 993 (1999) (BREYER, J., dissenting from denial of certiorari).

For these reasons, I respectfully dissent from the denial of certiorari.