Cite as: 578 U. S. ____ (2016)          1

# SUPREME COURT OF THE UNITED STATES

## LAMONDRE TUCKER *v.* LOUISIANA

### ON PETITION FOR WRIT OF CERTIORARI TO THE SUPREME COURT OF LOUISIANA

No. 15–946.   Decided May 31, 2016

The motion of Former Prosecutors for leave to file a brief as *amici curiae* is granted. The motion of Law and Political Science Scholars for leave to file a brief as *amici curiae* is granted. The motion of Charles Hamilton Houston Institute for Race and Justice at Harvard Law School to file a brief as *amicus curiae* is granted. The motion of Former Appellate Court Jurists for leave to file a brief as *amici curiae* is granted. The petition for a writ of certiorari is denied.

JUSTICE BREYER, with whom JUSTICE GINSBURG joins, dissenting from the denial of certiorari.

Lamondre Tucker shot and killed his pregnant girlfriend in 2008. At the time of the murder, Tucker was 18 years, 5 months, and 6 days old, cf. *Roper* v. *Simmons*, 543 U. S. 551, 578 (2005) ("The Eighth and Fourteenth Amendments forbid imposition of the death penalty on offenders who were under the age of 18 when their crimes were committed"), and he had an IQ of 74, cf. *Atkins* v. *Virginia,* 536 U. S. 304, 321 (2002) (execution of the intellectually disabled violates the Eighth Amendment). Tucker was sentenced to death in a Louisiana county (Caddo Parish) that imposes almost half the death sentences in Louisiana, even though it accounts for only 5% of that State's population and 5% of its homicides. See Pet. for Cert. 18.

Given these facts, Tucker may well have received the death penalty not because of the comparative egregiousness of his crime, but because of an arbitrary feature of his

case, namely, geography. See *Glossip* v. *Gross*, 576 U. S.
___, ___–___ (2015) (BREYER, J., dissenting) (slip op., at
12–14). One could reasonably believe that if Tucker had
committed the same crime but been tried and sentenced
just across the Red River in, say, Bossier Parish, he would
not now be on death row. See, *e.g.,* Smith, The Geography
of the Death Penalty and Its Ramifications, 92 B. U.
L. Rev. 227, 233–235, 278, 281 (2012); Robertson, The
Man Who Says Louisiana Should "Kill More," N. Y. Times,
July 8, 2015, p. A1 ("From 2010 to 2014, more people were
sentenced to death per capita [in Caddo Parish] than in
any other county in the United States, among counties
with four or more death sentences in that time period");
see also *Glossip*, *supra*, at ___ (BREYER, J., dissenting)
(slip op., at 12) ("[I]n 2012, just 59 counties (fewer than 2%
of counties in the country) accounted for *all* death sen-
tences imposed nationwide").

For this reason, and for the additional reasons set out in
my opinion in *Glossip*, I would grant certiorari in this case
to confront the first question presented, *i.e.,* whether
imposition of the death penalty constitutes cruel and
unusual punishment in violation of the Eighth and Four-
teenth Amendments.