NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

KA 17-766

STATE OF LOUISIANA

VERSUS

TERRANCE LAMONT JOHNSON

AKA - TERRANCE L. JOHNSON

**********

APPEAL FROM THE
THIRTY-THIRD JUDICIAL DISTRICT COURT
PARISH OF ALLEN, NO. CR-2016-0819
HONORABLE JOEL GERARD DAVIS, DISTRICT JUDGE

**********

**BILLY HOWARD EZELL**
**JUDGE**

**********

Court composed of Sylvia R. Cooks, Billy Howard Ezell, and D. Kent Savoie, Judges.

**CONVICTION FOR ATTEMPTED DISTRIBUTION OF HYDROCODONE AND ACETAMINOPHEN AFFIRMED; SENTENCE FOR DISTRIBUTION OF HYDROCODONE AND ACETAMINOPHEN VACATED AND REMANDED FOR RESENTENCING.**

**Herbert Todd Nesom**
**District Attorney 33rd Judicial District Court**
**Steven Sumbler**
**Assistant District Attorney**
**P. O. Box 839**
**Oberlin, LA 70655**
**(337) 639-2641**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **State of Louisiana**

**Chad M. Ikerd**
**Louisiana Appellate Project**
**P.O.Box 2125**
**Lafayette, LA 70502**
**(225) 806-2930**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Terrance Lamont Johnson**

**Terrance Lamont Johnson**
**S.C.C. Bldg. 4 D**
**158 Treatment Plant Road**
**Tallulah, LA 71282**

**EZELL, Judge.**

Defendant Terrence Lamont Johnson was charged by a bill of information on March 23, 2016, with two counts of distribution of Schedule III, controlled dangerous substances, hydrocodone and acetaminophen, in violation of La.R.S. 40:968(A)(1). A jury trial commenced April 10, 2017, and on April 11, 2017, Defendant was found guilty of one count of attempted distribution of a Schedule III controlled dangerous substance and one count of distribution of a Schedule III controlled dangerous substance. Defendant was sentenced on May 9, 2017, to five years at hard labor on the conviction for attempted distribution of a Schedule III drug, with credit for time served, and fifteen years on the distribution of a Schedule III drug, with five years suspended and three years active probation upon release, with credit for time served. The two sentences were ordered to be served concurrently.

Defendant filed the present appeal, wherein he asserts that the evidence was insufficient to sustain the convictions and that defense counsel rendered ineffective assistance. For the following reasons, we find that there is no merit to assignment of error number one and that the allegation of ineffective assistance of counsel should be relegated to post-conviction consideration.

## FACTS

At trial, the following testimony and evidence was admitted to the jury. Jeff Manuel testified that he worked as a confidential informant for the Allen Parish Narcotics Taskforce. He said that he was a recovering drug addict, having been addicted to hydrocodone and had volunteered to be a confidential informant because he understood how drugs could destroy a life. Because of his experience, he wanted to help resolve the problem in the community. He testified that he has been sober since 2007. Mr. Manuel explained that he has helped the narcotics

team with approximately twenty to twenty-five drug cases. Mr. Manuel testified that on November 20, 2014, he was contacted by Defendant and offered hydrocodone. Mr. Manuel contacted the Allen Parish Narcotics team and advised them of Defendant's call. On that date, he met with the narcotics team. He was given $120. The narcotics team installed audio and video surveillance equipment in his vehicle. Before he left to meet with Defendant, the narcotics team searched both him and his car. He drove to Defendant's girlfriend's house where he met up with Defendant. Defendant got into his car, and they made the exchange of money for the drugs. Following the exchange, Mr. Manuel met with the narcotics team. The narcotics officers took possession of the drugs, took the audio and video equipment, and again searched Mr. Manuel and his vehicle. Mr. Manuel testified that on January 14, 2015, he was once again contacted by Defendant regarding the purchase of more hydrocodone. Mr. Manuel stated he contacted the narcotics officers and again, using $105, purchased more drugs from Defendant. Mr. Manuel stated he went through the same preparation for the purchase of the drug as described above. This time, he met Defendant in a hospital parking lot to make the exchange.

Newton Ingalls was a deputy with the Allen Parish Sheriff's Office/ Narcotics Division at the time of the November 20, 2014, and January 14, 2015, controlled buys from Defendant. He testified that on November 20, 2014, the narcotics team was contacted by Mr. Manuel that Defendant had contacted him about purchasing some hydrocodone. The deputy and Detective William Johnson met with Mr. Manuel at a designated location. At the time, Defendant was a suspected drug dealer. The deputy and the detective searched Mr. Manuel and his vehicle, and installed audio and video surveillance equipment in his vehicle. They gave him money for the purchase. They monitored the call Mr. Manuel made to

2

Defendant to agree to a location to meet for the exchange of drugs for money. At the location, Defendant got into Mr. Manuel's vehicle. They sat briefly, made the exchange, and Defendant exited the vehicle. Mr. Manuel returned to where the deputy and the detective were waiting for him. They took possession of the drugs, searched Mr. Manuel and his vehicle to be sure there were no other drugs or money, and nothing was found. They took the audio and video equipment.

Deputy Ingalls testified that the same routine for a controlled buy was performed on January 14, 2015, when Mr. Manuel notified them that Defendant had contacted him about purchasing more hydrocodone pills. Deputy Ingalls identified Defendant in open court as the man from whom the hydrocodone pills were purchased on November 20, 2014, and January 14, 2015. Deputy Ingalls stated the money given to Mr. Manuel to purchase the drugs was never recovered.

William Johnson, a detective with the Allen Parish Sheriff's Office, testified that he was the lead investigator with the narcotics team. He stated he and Deputy Ingalls worked together with Mr. Manuel to conduct controlled buys from Defendant. His testimony was the same as Deputy Ingalls's and Mr. Manuel's testimonies. On November 20, 2014, and January 14, 2015, he and Deputy Ingalls placed surveillance equipment in Mr. Manuel's truck. The detective identified the CD he burned from the audio and video recordings. At the first controlled buy, Mr. Manuel was given $120 for the buy and at the second purchase, Mr. Manuel was given $105.

Detective Johnson stated that although the serial numbers on the money had been recorded, they never recovered the money. He stated that they did not expect to recover the money as it was an ongoing investigation.

Ida Benoit testified that she was a forensic analyst working for the Southwest Louisiana Criminalistic Laboratory. She qualified as an expert on drug

analysis. She testified that the two batches of pills she was given on December 11, 2014, and January 15, 2015, for analysis were hydrocodone pills. Ms. Benoit's report was published to the jury.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find there is one error patent.

The sentence imposed by the trial judge for distribution of hydrocodone and acetaminophen in violation of La.R.S. 40:968(A)(1) is illegally excessive. Although Defendant was charged with the distribution of hydrocodone and acetaminophen, a Schedule III controlled dangerous substance, in violation of La.R.S. 40:968(A)(1),[1] and was found guilty as charged by the jury, it appears the trial court sentenced Defendant under the sentencing provision for a Schedule II drug. As stated by this court in *State v. Chaisson*, 11-1135, p. 10 (La.App. 3 Cir. 6/6/12), 91 So.3d 1224, 1230, "[t]he legislature saw fit to include some forms of hydrocodone in Schedule II and others in Schedule III and for the penalties involving each to differ." As will be discussed, Defendant should have been sentenced under the penalty provision applicable to a Schedule III drug, the maximum sentence being ten years at hard labor for distribution. La.R.S. 40:968(B).

At sentencing, the trial court stated it was sentencing Defendant for distribution of Schedule II hydrocodone and for attempted distribution of hydrocodone. For distribution of hydrocodone, the trial court sentenced Defendant to fifteen years in the Department of Corrections, with five years suspended. For

---

[1] Although Defendant was originally charged with two counts of distribution of hydrocodone (Schedule II) in violation of La.R.S. 40:967(A)(1), the bill of information was amended to charge him with two counts of distribution of hydrocodone and acetaminophen (Schedule III) in violation of La.R.S. 40:968(A)(1).

4

attempted distribution of hydrocodone, Defendant was sentenced to five years at hard labor.[2]

In *Chaisson*, this court explained the difference between hydrocodone as a Schedule II drug and hydrocodone as a Schedule III drug:

> Hydrocodone is found in both Schedule II and Schedule III as defined in La.R.S. 40:964. Schedule II lists hydrocodone, and Schedule III lists hydrocodone when found in certain amounts and/or mixed with other nonnarcotic ingredients. The penalties for Schedule II and Schedule III violations involving hydrocodone differ greatly.
>
> Louisiana Revised Statutes 40:967(B) provides the penalty for a Schedule II violation as follows:
>
> > Except as provided in Subsection F, any person who violations Subsection A with respect to:
> >
> > (1) A substance classified in Schedule II which is an amphetamine or methamphetamine or which is a narcotic drug, except cocaine or cocaine base or a mixture or substance containing cocaine or its analogues as provided in Schedule II(A)(4) of R.S. 40:964 and except oxycodone as provided in Schedule II(A)(1)(*o*) of R.S. 40:964 and except methadone as provided in Schedule II(B)(11) of R.S. 40:964 shall be sentenced to a term of imprisonment at hard labor for not less than two years nor more than thirty years; and may, in addition, be sentenced to pay a fine of not more than fifty thousand dollars.
>
> Louisiana Revised Statutes 40:961, in pertinent part, defines the term narcotic drug as follows:
>
> > (26) "Narcotic drug" means any of the following, whether produced directly or indirectly by extraction from substances of vegetable origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis:
> >
> > (a) Opium, coca leaves, and opiates.
> >
> > (b) A compound, manufacture, salt, derivatives, or preparation of opium, coca leaves, or opiates.

---

[2] Defendant's sentence for attempted distribution of hydrocodone and acetaminophen, five years at hard labor, is legal under the terms of La.R.S. 40:968(B) and 14:27. Accordingly, we do not find an error patent, even though it is possible Defendant was sentenced under the wrong provision for this offense as well.

Hydrocodone is listed in Schedule II under the subsection dealing with "[o]pium and opiate, and any salt, compound, isomer, derivative, or preparation of opium or opiate."

Louisiana Revised Statutes 40:968(B) provides the penalty for a Schedule III violation as follows:

> Any person who violates Subsection A with respect to any controlled dangerous substance classified in Schedule III shall be sentenced to a term of imprisonment at hard labor for not more than ten years; and, in addition, may be sentenced to pay a fine of not more than fifteen thousand dollars.

The legislature saw fit to include some forms of hydrocodone in Schedule II and others in Schedule III and for the penalties involving each to differ. The exact identity of the controlled dangerous substance at issue determines the maximum authorized sentence, and is an essential element of the crime of distribution of hydrocodone.

*Id.* at 1230 (alteration in original).

Considering the charging instrument in the present case, the jury instructions given by the trial court, and the jury's verdict, we find Defendant was charged with and found guilty of distribution of hydrocodone and acetaminophen in Count 2. Thus, the maximum sentence to which Defendant could have been sentenced was ten years at hard labor and a fine of not more than $15,000. La.R.S. 40:968(B). Accordingly, Defendant's sentence of fifteen years at hard labor, with five years suspended is illegally excessive. This sentence is hereby vacated, and the case remanded for resentencing in accordance with this court's opinion.

## ATTORNEY ASSIGNMENT OF ERROR NUMBER ONE AND PRO-SE ASSIGNMENT OF ERROR NUMBER ONE

Defendant argues that there was insufficient evidence offered to show that there was an exchange of drugs for money. Defendant notes that the police never recovered the "buy" money. He argues that in the first video, there is no showing of drugs being given to Mr. Manuel or any money given to Defendant. In the second video, there is a showing of Defendant receiving money but no showing of

6

him passing any drugs to Mr. Manuel. He further argues that there was no video offered that showed the deputy or the detective searching Mr. Manuel or his vehicle following each alleged controlled buy; therefore, considering the lack of visual evidence, Defendant argues that the evidence was not sufficient to support the verdicts.

> The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, [433 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560(1979)]. In the absence of internal contradictions or irreconcilable conflict with physical evidence, the testimony of one witness is sufficient support for a requisite factual conclusion if that witness is believed by the trier of fact. *State v. Jones*, 31,613 (La.App.2d Cir.4/1/99), 733 So.2d 127, *writ denied*, 99-1185 (La.10/01/99), 748 So.2d 434; *State v. Ford*, 28,724 (La.App.2d Cir.10/30/96), 682 So.2d 847, *writ denied*, 99-0210 (La.5/14/99), 745 So.2d 12.
>
> This standard, now legislatively embodied in LSA-C.Cr.P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. *State v. Robertson*, 96-1048 (La.10/04/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. *State v. Smith,* 94-3116 (La.10/16/95), 661 So.2d 442. Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of witnesses, the matter is one of the weight, not the sufficiency, of the evidence. *State v. Allen,* 36,180 (La.App.2d Cir.9/18/02), 828 So.2d 622, *writs denied,* 02-2595 (La.3/28/03), 840 So.2d 566, 02-2997 (La.6/27/03), 847 So.2d 1255, *cert. denied*, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. *State v. Gilliam*, 36,118 (La.App.2d Cir.8/30/02), 827 So.2d 508, *writ denied,* 02-3090 (La.11/14/03), 858 So.2d 422.
>
> . . . .
>
> In order to convict a defendant for possession of a CDS with the intent to distribute pursuant to LSA-R.S. 40:967(A), the state must prove beyond a reasonable doubt that the defendant knowingly and intentionally possessed the CDS and that he did so with the intent to distribute it. *State v. Moore*, 40,311 (La.App.2d Cir.1/13/06), 920 So.2d 334, *writ denied*, 06-2267 (La.6/1/07), 957 So.2d 167; *State v. Clark,* 35,272 (La.App.2d Cir.12/5/01), 803 So.2d 280.

*State v. Brown,* 42,188; 42,189; 42,190, pp. 9-12 (La.App. 2 Cir. 9/26/07), 966 So.2d 727, 741-42, *writ denied,* 07-2199 (La. 4/18/08), 978 So.2d 347. Furthermore, "Evidence may be either direct or circumstantial." *State v. Jacobs*, 07-887, p. 12 (La.App. 5 Cir. 5/24/11), 67 So.3d 535, 551, *writ denied*, 11-1753 (La. 2/10/12), 80 So.3d 468, *cert. denied*, 568 U.S. 838, 133 S.Ct. 139 (2012). Whether the conviction is based on direct evidence or solely on circumstantial evidence, the review is the same under the *Jackson v. Virginia* standard. *State v. Sutton*, 436 So.2d 471 (La.1983). Circumstantial evidence is that where the main fact can be inferred, using reason and common experience, from proof of collateral facts and circumstances. *Id.*

A review of the audio/videos shows as follows: The November 20, 2014 video starts with one of the deputies installing the surveillance device. The view is from the dash in front of Mr. Manuel. Money being counted can be heard from outside the truck. Mr. Manuel gets into the truck, starts driving away, and he says he has $120 to purchase hydrocodone from Defendant. After driving for a few minutes, Mr. Manuel stops and Defendant gets into the truck. The view of Defendant's and Mr. Manuel's hands are obscured. Defendant appears to be counting out something from his hand, and he then takes something out of Mr. Manuel's hand. Defendant says he will have more and will let Mr. Manuel know when he does, then Defendant exits the truck. Mr. Manuel can be heard saying that he just purchased twenty hydrocodone pills for $120. Mr. Manuel drives a short while. He stops, and one of the deputies enters the truck and takes the pills from Mr. Manuel. The deputy can be seen briefly searching the truck.

For the January 14, 2015 controlled buy, two surveillance cameras were installed in Mr. Manuel's truck: one from under the dash directed towards the passenger seat and one in the back seat of the truck, directed towards the front

passenger seat. This time, the exchange of money and pills is clearly seen from both views. Mr. Manuel received fifteen pills in exchange for $105. There is a discussion of the fact that Defendant was short five pills and that each pill was $7.

While in the first video, the actual exchange of money for pills cannot be seen, there was sufficient evidence that a drug transaction had taken place. In *State v. Sander*, 10-1640, p. 7 (La.App. 4 Cir. 7/6/11), 69 So.3d 730, 734, the fourth circuit, while discussing reasonable suspicion that a drug transaction occurred, cited *State v. Pratt*, 08-1819, p. 2 (La. 9/4/09), 16 So.3d 1163, 1165, stated that "[a]n experienced police officer's observation of hand movements consistent with a drug transaction, even if he cannot observe what was exchanged, may provide 'the requisite minimal objective basis for an investigatory stop." Considering the conversation between Mr. Manuel and Defendant in the truck to purchase future drugs and that Mr. Manuel left the deputies with $120 and returned with no money and twenty hydrocodone pills in the current case, we find there was sufficient evidence, both direct and circumstantial, for the jury to find Defendant guilty of attempted distribution of a controlled dangerous substance beyond a reasonable doubt.

As for the January 20, 2015, video there was no doubt that money was exchanged for drugs. Furthermore, both Deputy Ingalls and Detective Johnson testified that Mr. Manuel and his vehicle were searched both before he left with the money to purchase the drugs and when he returned after the transactions. As noted above, "in the absence of internal contradictions or irreconcilable conflict with physical evidence, the testimony of one witness is sufficient support for a requisite factual conclusion if that witness is believed by the trier of fact." *Brown*, 966 So.2d at 741. All three of the State's witnesses' testimonies were identical as to the facts stated above. There were no contradictions or conflicts with the evidence. There

9

was sufficient evidence for the jury to find beyond a reasonable doubt that Defendant was guilty of distribution of a controlled dangerous substance.

There is no merit with either the attorney's or the pro-se allegations of insufficient evidence in this case.

## ATTORNEY ASSIGNMENT OF ERROR AND PRO-SE ASSIGNMENT OF ERROR NUMBER TWO

Defendant asserts that defense counsel was ineffective because he labored under a conflict of interest. He asserts that because defense counsel had represented Mr. Manuel on a drug conviction in the past, defense counsel was prevented from fully impeaching Mr. Manuel to Defendant's benefit.

In *State v. Gorman*, 11-491, pp. 12-13 (La.App. 5 Cir. 2/14/12), 88 So.3d 590, 598-99, while discussing a possible conflict of interest of defense, the fifth circuit noted:

> Additionally, a criminal defendant is entitled not only to counsel but also to conflict-free counsel. U.S. Const. Amend. 6 and 14; La. Const. Art. I., § 13; *State v. Franklin*, 400 So.2d 616, 620 (La.1981). After the trial court has been alerted that a conflict of interest exists, the judge must take the proper steps to assure that the defendant's Sixth Amendment right to effective assistance of counsel is not violated. *State v. Cisco*, 01-2732 (La.12/3/03), 861 So.2d 118, 132, *cert. denied,* 541 U.S. 1005, 124 S.Ct. 2023, 158 L.Ed.2d 522 (2004).

> The mere possibility of a conflict is insufficient to impugn a criminal conviction. *Cuyler v. Sullivan,* 446 U.S. 335, 350, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333 (1980). It is only when an actual conflict exists that the reversal of a conviction may be required. *See Mickens v. Taylor,* 535 U.S. 162, 168, 122 S.Ct. 1237, 1242, 152 L.Ed.2d 291 (2002), citing *Holloway v. Arkansas,* 435 U.S. 475, [11-491 La.App. 5 Cir. 13] 481, 98 S.Ct. 1173, 1181, 55 L.Ed.2d 426 (1978. An actual conflict is defined as follows:

> > If a defense attorney owes duties to a party whose interests are adverse to those of the defendant, then an actual conflict exists. The interest of the other client and the defendant are sufficiently adverse if it is shown that the attorney owes a duty to the defendant to take some action that could be detrimental to his other client.

10

In the current case, at trial during cross-examination, defense counsel immediately advised to Mr. Manuel that he had represented Mr. Manuel on a drug case eleven years prior. Mr. Manuel agreed. Defense counsel asked Mr. Manuel whether he had ever been convicted of a weapons charge, an aggravated assault with a firearm charge, or illegal use of a dangerous instrumentality charge in Evangeline Parish. To each of these questions, Mr. Manuel answered no. Following this, the rest of defense counsel's questions concerned the current case. Defendant never objected at this point.

In brief, the State asserts that the record is insufficient to resolve the issue of whether there was a conflict of interest in that the interest of defense counsel's former client was in anyway adverse to his present client; and therefore, the matter must be relegated to a post-conviction application.

This court has stated:

> A claim for ineffective assistance of counsel is properly raised in an application for post-conviction relief because this allows the trial court to order a full evidentiary hearing on the matter. *State v. Burkhalter*, 428 So.2d 449 (La.1983). However, where the record contains sufficient evidence to decide the issue, and the issue is raised by an assignment of error on appeal, it may be considered by the appellate court. *State v. Tapp,* 08-1262 (La.App. 3 Cir. 4/1/09), 8 So.3d 804; *See also State v. James*, 95-962 (La.App. 3 Cir. 2/14/96), 670 So.2d 461.

*State v. Christen*, 09-890, p. 7 (La.App. 3 Cir. 2/3/10), 29 So.3d 696, 701.

We agree with the State. The record in this case is not sufficient to resolve the issue of whether defense counsel labored under a conflict of interest. "Actual conflicts of interest that adversely affect counsel's performance must be established by specific instances in the record, and the mere possibility of divided loyalties is insufficient proof of actual conflict." *State v. Castaneda*, 94-1118, p. 12 (La.App. 1 Cir. 6/23/95), 658 So.2d 297, 305. In a recent third circuit case, *State v. Thomas*, 16-578, p. 34 (La.App. 3 Cir. 4/19/17), 217 So.3d 651, 673

11

(alterations in original), this court addressed a similar situation wherein it determined there was no conflict of interest:

> Recently, in *State v. Tucker*, 13-1631, p. 37 (La. 9/1/15), 181 So.3d 590, 619, *cert. denied*, __U.S. __, 136 S.Ct. 1801, 195 L.Ed.2d 774 (2016), the supreme court explained that even if a defendant proves an actual conflict, he still must show that a "lapse in representation" resulted from the conflict.
>
> > "[O]nce Defendant established that there was an actual conflict, he need not prove prejudice, but simply that a 'lapse in representation' resulted from the conflict. [*United States v.*] *Iorizzo*, 786 F.2d [52,] 58 [ (2d Cir. 1986) ] (quoting *Cuyler* [*v. Sullivan*], 446 U.S. [335,] 349, 100 S.Ct. [1708,] 1718, 64 L.Ed.2d 333 [ (1980)] ). To prove a lapse in representation, a defendant must "demonstrate that some 'plausible alternative defense strategy or tactic might have been pursued,' and that the 'alternative defense strategy was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests,'" *United States v. Levy*, 25 F.3d 146, 157 (2d Cir. 1994) (quoting *Winkler* [*v. Keane*], 7 F.3d [304] at 309 [ (1993)] ).

Defendant argues only that there was a conflict of interest without identifying specific instances in the record, other than Mr. Manuel's agreement that defense counsel had represented him on a drug case eleven years prior. As noted by the State, it cannot be determined from the record whether defense counsel knew something Mr. Manuel was failing to disclose which would have been beneficial to Defendant's case, or whether defense counsel's decision was a tactical attempt to prevail at trial. We hereby relegate the matter to post-conviction relief, wherein an evidentiary hearing may be held to determine additional facts concerning defense counsel's prior representation of Mr. Manuel.

## DISPOSITION

We hereby confirm the convictions and the sentence imposed on the conviction for attempted distribution of hydrocodone and acetaminophen. However, Defendant's fifteen-year sentence for distribution of hydrocodone and

acetaminophen is vacated and the case is remanded for resentencing in accordance with this court's opinion. As for Defendant's allegation of ineffective assistance of counsel, we find there is insufficient information in the record to address the issue and the matter is relegated to post-conviction relief.

**CONVICTION FOR ATTEMPTED DISTRIBUTION OF HYDROCODONE AND ACETAMINOPHEN AFFIRMED; SENTENCE FOR DISTRIBUTION OF HYDROCODONE AND ACETAMINOPHEN VACATED AND REMANDED FOR RESENTENCING.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Uniform Rules—Courts of Appeal. Rule 2-16.3.